**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF ILLINOIS**
**URBANA DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | ) |
| Plaintiff, | ) |
| v. | ) Case No. 10-CR-20001 |
| **JIMMY A. LaCOST, MICHAEL W. LaCOST,** **and LaCOST AMUSEMENTS, INC., a corporation,** | ) |
| Defendants. | ) |

## OPINION

This case is before the court for ruling on two motions filed by Defendants, Jimmy A. LaCost and LaCost Amusements, Inc. (LaCost Amusements), as well as a motion for leave to intervene filed by the Illinois Department of Financial and Professional Regulation. This court has carefully considered the arguments presented and rules as follows: (1) Defendants' Motions to Compel (#57, #58) are DENIED and the Motion for Leave to Intervene (#64) is GRANTED.

## BACKGROUND

On January 6, 2010, the grand jury returned a 12-page, 109 count indictment (#1) against Jimmy A. LaCost, Michael W. LaCost and LaCost Amusements. In Counts 1 through 54, Defendants Jimmy LaCost and LaCost Amusements were charged with committing specified structured transactions over a period from January 25, 2005, to June 22, 2009, for the purpose of evading the reporting requirements of 31 U.S.C. § 5313(a), and regulations prescribed thereunder, while violating another law of the United States as set forth in Count 55 of the indictment, and as part of a pattern of illegal activity involving more than $100,000 in a 12-month period commencing on January 1, 2008, in violation of 31 U.S.C. § 5324(a)(3) and (d)(2), 18 U.S.C. § 2, and 31 C.F.R. § 103.11. In Count 55, all three Defendants were charged with conducting, financing, managing, supervising, directing, and owning part of an illegal gambling business, namely, a gambling business

providing and maintaining video gambling machines and devices, in violation of 18 U.S.C. §§ 2 and 1955(a). In Counts 56 through 109, Defendants Jimmy LaCost and LaCost Amusements were charged with separate specified incidents of money laundering, from January 25, 2005, to June 22, 2009, in violation of 18 U.S.C. §§ 2 and 1956(a)(1)(B)(ii). The indictment also alleged that the property involved in transactions or attempted transactions in violation of 18 U.S.C. § 1956 is subject to forfeiture. Defendants are represented by retained counsel and have pleaded not guilty to the charges.

On July 30, 2010, Defendants filed a Motion for Entry of Order Permitting their Counsel to Cause the Issuance of a Subpoena Duces Tecum to MainSource Bank (#50). Defendants stated that, in order to defend against the charges against them, they needed to obtain documents from MainSource Bank. Defendants attached, as Exhibit A, a list of the documents they needed to obtain from MainSource Bank prior to trial. The list included seven categories of documents to be provided by MainSource Bank.

On August 27, 2010, the Government filed its Response to Defendants' Motion Re: Issuance of a Subpoena Duces Tecum to MainSource Bank (#52). The Government stated that, as a general matter, it had no objection to Defendants' Motion. The Government further stated, however, that Defendants' proposed subpoena sought production of "[a]ny and all Suspicious Activity Reports ('SAR's') filed by the bank with government or other regulatory authorities related to deposits made by, or other banking activity of, LaCost Amusements, Inc. or Jimmy LaCost." The Government stated that financial institutions are prohibited from disclosing SARs pursuant to subpoenas. See 31 C.F.R. § 103.18(e).

On September 2, 2010, this court entered an Opinion (#53). Based upon the Government's Response, this court concluded that Defendants' Motion must be granted in part and denied in part.

The Motion was granted as to six of the seven categories of documents listed in Exhibit A. However, the Motion was denied as to the third listed category of documents seeking production of SARs.

PENDING MOTIONS

On March 9, 2011, Defendants Jimmy A. LaCost and LaCost Amusements filed a Motion to Compel Compliance with Subpoena Duces Tecum to MainSource Bank (#57) and a Motion to Compel Disclosure by the United States of Material Pursuant to *Brady* and/or *Giglio* (#58).[1] In their Motion to Compel Compliance (#57), Defendants stated that, in December 1999, LaCost Amusements opened a corporate bank account at Capstone Bank in Kankakee. In 2003, MainSource Bank purchased Capstone Bank. From that time to the present, LaCost Amusements has continued to bank at MainSource Bank. Defendants stated that the charges against them in this case are based on deposits to LaCost Amusement's bank accounts at MainSource Bank. Defendants argued that, to defend these charges, Defendants need to obtain documentary evidence from MainSource Bank.

Defendants stated that, in response to their Subpoena, MainSource Bank produced some documents to counsel for Defendants but had not produced certain materials requested pursuant to paragraph 5 of the Subpoena. Specifically, Defendants stated that MainSource Bank did not produce "incident reports" that training materials indicate must be prepared to inform management of suspicious activities and the original or business record equivalent of any supporting documentation for any SAR that Capstone Bank/MainSource Bank was required to maintain. Defendants stated that MainSource Bank indicated that it could not produce these records because it could neither confirm nor deny the existence of an SAR or provide documentation related to an SAR. Defendants argued

---

[1] Referring to Brady v. Maryland, 373 U.S. 83 (1963) and Giglio v. United States, 405 U.S. 150 (1972).

that "supporting documentation" for an SAR is discoverable. Defendants also argued that the records requested from MainSource Bank are clearly relevant to the structuring and money laundering charges made against Defendants and are necessary for Defendants to prepare and present a defense to the charges made. Defendants asked for an order compelling MainSource Bank to produce all records responsive to paragraph 5 of the Subpoena.

In their Motion to Compel Disclosure by the United States (#58), Defendants stated that they had requested, by letter, that counsel for the Government produce specific materials believed to be in the possession of federal and/or state government authorities that are either material to Defendants' guilt, innocence, or sentencing, or bear upon the credibility of financial institution witnesses the Government intends to call. The documents requested by Defendants included SARs, reports from Government regulators, and currency transaction reports (CTRs) filed with federal or state regulatory authorities (because MainSource Bank only maintains CTRs for five years so was unable to produce CTRs that were filed more than 5 years ago). Defendants stated that the Government responded to their request by letter and said that it was unaware of any obligation under Brady or Giglio that would require the disclosure of any requested SAR, assuming that any such SAR exists. The Government also stated that, as to Defendants' request for certain information from regulators concerning the compliance of MainSource and Capstone with the requirements of federal law and regulations, "[n]one of the regulators . . . have been involved in the investigation or prosecution of this case." The Government further stated that, as to the request for CTRs and documents related to the designation by Capstone and/or MainSource of Jimmy LaCost or LaCost Amusements as an exempt person, the Government would search the records of the Internal Revenue Service (IRS), the agency involved in the investigation of this case.

Defendants argued that the Government has an obligation to provide the records they

4

requested under Brady and Giglio. Defendants argued that "[p]rosecutors must take a broad view of materiality and err on the side of disclosing exculpatory and impeaching evidence," citing Kyles v. Whitley, 514 U.S. 419, 439 (1995). Defendants also argued that the records requested are clearly relevant to the structuring and money laundering charges made against Defendants. Defendants asked this court to enter an order compelling the Government to produce any material pursuant to Brady or Giglio, including, but not limited to, those items requested in their letter to counsel for the Government.

On March 16, 2011, a status conference was held in this case. Prior to the status conference, attorneys for MainSource Bank had entered their appearance on behalf of MainSource Bank, as an interested party. Attorneys for MainSource Bank therefore participated in the status conference. This court added MainSource Bank as an interested party in the case and allowed it until March 30, 2011, to file its response to Defendants' Motion to Compel Compliance with Subpoena (#57). This court also allowed the Government until March 30, 2011, to file a response to the Motion to Compel Disclosure (#58). This court allowed Defendants until April 7, 2011, to file replies to the responses.[2]

On March 30, 2011, MainSource Bank filed its Response to Defendants' Motion to Compel (#63). MainSource Bank stated that it initially complied with Defendants' Subpoena on November 10, 2010. MainSource Bank asserted certain objections, but nonetheless produced a number of documents, including Defendants' deposit slips, CTRs, and MainSource Bank's 2010 training/compliance manual regarding the Bank Secrecy Act (BSA). MainSource Bank's counsel then engaged in conversations with Defendants' counsel regarding additional records Defendants were seeking. MainSource Bank declined to produce any incident reports or supporting documents

---

[2] At the conference, this court granted an oral motion made by Michael W. LaCost to join in the Motion to Compel Disclosure (#58).

related to any SARs based upon 12 C.F.R. § 353.3(g) and 31 U.S.C. § 5318(g)(2)(A)(i) and supporting case law protecting the confidentiality of such documents. MainSource Bank stated that, in their Motion, Defendants are seeking any incident reports that led to the filing of an SAR, as well as all other documents that supported the filing of any SAR with respect to LaCost Amusement's accounts. In its lengthy argument, MainSource Bank contended that, based upon the applicable law, it cannot produce the documents requested by Defendants, noting that numerous courts have upheld the confidentiality of information related to an SAR. MainSource Bank argued that courts have stated that only factual documents which give rise to suspicious activity should be produced and noted that it has already produced those factual documents. MainSource Bank argued that any incident reports or other supporting documents would reveal the existence of an SAR and are not to be produced. MainSource Bank asked this court to deny Defendants' Motion to Compel.

On March 30, 2011, the Government filed its Response to Defendants' Motion to Compel Disclosure (#62). The Government stated that, according to the Financial Crimes Enforcement Network, a bureau of the United States Department of the Treasury responsible for administering the BSA, "disclosure of SARs or even of their existence undermines the confidentiality surrounding their filing." The Government also stated, citing 31 U.S.C. § 5318(g)(2)(A)(ii), that the United States is prohibited from disclosing to any person involved in the transaction that the transaction has been reported, other than as necessary to fulfill its official duties. The Government cited case law in support of its argument that SARs must not be disclosed and noted that Defendants "fail to cite one single case where a court has ordered the disclosure of an SAR." The Government further argued that it was unaware of any information in any SAR that should be disclosed under Brady or Giglio. The Government noted that it agreed with Defendants that any statement made by a Government witness that is contained in an SAR would be subject to disclosure pursuant to the

Jencks Act, 18 U.S.C. § 3500, after such witness has testified on direct examination in the trial of the case. The Government further noted that the Jencks Act specifically prohibits Defendants' requested relief here, a motion to compel pretrial disclosure through discovery. 18 U.S.C. § 3500(a) ("no statement or report in the possession of the United States which was made by a Government witness or prospective Government witness . . . shall be the subject of [subpoena], discovery, or inspection until said witness has testified on direct examination in the trial of the case").

As far as Defendants' request for documents from state and government regulators, the Government argued that the breadth of the request indicated that the request was a classic "fishing expedition." The Government further noted that the case was investigated by agents of the IRS and it has agreed to disclose any requested information in the possession of the IRS. The Government stated that "[o]n the other hand, the Federal Deposit Insurance Corporation, the Office of the Comptroller of the Currency, the Office of Thrift Supervision, and the Illinois Department of Financial and Professional Regulation have not consulted with the prosecution during this investigation and prosecution, nor are they otherwise part of the prosecution team." Citing United States v. Morris, 80 F.3d 1151, 1169-70 (7th Cir. 1996), the Government argued that it has no duty to discover or disclose documents possessed by government agencies that have no involvement in the investigation or prosecution of the case. The Government asked that Defendants' Motion to Compel Disclosure (#58) be denied.

On March 31, 2011, the Illinois Department of Financial and Professional Regulation (Department) filed a Motion for Leave to Intervene (#64), a Memorandum of Law in Support of Motion for Leave to Intervene (#65) and a Response to Defendants' Motion to Compel (#66). In its Memorandum of Law in Support of it Motion for Leave to Intervene, the Department stated that MainSource Bank notified it in January 2011 regarding Defendants' revised Subpoena issued to

7

MainSource Bank. On February 16, 2011, the Department sent a letter to counsel for Defendants, notifying Defendants that their Subpoena sought documents that are Confidential Supervisory Information, as defined by the Illinois Banking Act, pursuant to 205 Ill. Comp. Stat. 5/48.3 (West 2011). The letter also informed Defendants that all requests for this information must be directed to the Department in accordance with Illinois Administrative Rules. The Department stated that it did not receive any further communication regarding this matter. The Department argued that, under Illinois law, the Illinois Banking Act confers upon the State an unconditional right to intervene to prevent Confidential Supervisory Information from being disclosed in violation of 205 Ill. Comp. Stat. 5/48.3. The Department noted that, additionally, Rule 24(b)(2) of the Federal Rules of Civil Procedure allows for permissive intervention of a government agency when a party's claim is based on a statute administered by the agency. In its Motion and Memorandum, the Department asked this court to grant it leave to intervene in this action.

On April 7, 2011, Defendants filed a Reply to MainSource Bank's Response (#67) and a Reply to the Government's Response (#68). In their Reply to MainSource Bank's Response, Defendants argued that facts giving rise to the filing of an SAR are discoverable if those facts are available in a document created in the ordinary course of the bank's business. Defendants also asked this court to conduct an *in camera* review of documents to determine whether they should be disclosed. In Defendants' Reply to the Government's Response, Defendants argued that the Government can be required to produce SARs, citing United States v. Evanson, 2007 WL 128960 (D. Utah 2007). Defendants also argued that the Government should be required to discover whether the Office of the Comptroller of the Currency and the Federal Deposit Insurance Corporation have in their possession documents that concern MainSource Bank/Capstone Bank's lack of compliance with the reporting requirements of the BSA or the Anti-Money Laundering Act,

8

or applicable federal regulations related thereto. Defendants argued that these documents are material to preparing their defense.

ANALYSIS

I. MOTION FOR LEAVE TO INTERVENE

No response has been filed to the Department's Motion for Leave to Intervene (#64) so this court presumes there is no opposition. Therefore, the Department's Motion for Leave to Intervene (#64) is GRANTED and this court will consider the Department's Response to Motion to Compel (#66) in ruling on Defendants' Motion to Compel Compliance with Subpoena (#57).

In its Response (#66), the Department stated that, at all relevant times, MainSource Bank was either an Illinois State Bank under the Illinois Banking Act or it was a bank operating in Illinois pursuant to the Illinois Banking Act. At all relevant times, activities conducted by MainSource Bank in Illinois were subject to examination and investigation by the Department pursuant to the Banking Act, along with other statutes. Section 48.3 of the Banking Act defines "confidential supervisory information" (CSI) as:

> Any report of examination, visitation, or investigation prepared by the [Secretary of Financial and Professional Regulation (Secretary)] under this Act . . ., any document or record prepared or obtained in connection with or relating to any examination, visitation, or investigation, and any record prepared or obtained by the [Secretary] to the extent that the record summarizes or contains information derived from any report, document, or record described in this subsection . . . .

205 Ill. Comp. Stat. 5/48.3(a) (West 2011).[3] Section 48.3 states that CSI "shall be the property of the [Secretary] and shall be privileged from disclosure to any person except as provided in this Section. No person in possession of [CSI] may disclose that information for any reason or under any circumstances not specified in this Section without the prior authorization of the [Secretary]." 205 Ill. Comp. Stat. 5/48.3(c)(1) (West 2011).

The Department stated that any person or entity wishing to obtain or disclose CSI has only one course of action available. Section 48.3 explains that "[a]ny request for discovery or disclosure of [CSI], whether by subpoena, order, or other judicial or administrative process, shall be made to the [Secretary, who] shall determine within 15 days whether to disclose the information pursuant to procedures and standards that the [Secretary] shall establish by rule." 205 Ill. Comp. Stat. 205/48.3(c)(2) (West 2011). The Department stated that, although Defendants never sought permission from the Department to release CSI, MainSource Bank did. MainSource Bank's request was reviewed and it was determined that the Illinois Banking Act did not provide any authority for release of any CSI in this case. This information is rarely disclosed, as it is the Department's position that CSI must not be disclosed in order to promote absolute candor in communications between bankers and examiners and to protect the expectation of privacy individuals have with their banking institutions. The Department therefore asked this court to deny Defendants' Motion to Compel and strike all portions of Defendants' Subpoena to MainSource Bank to the extent the Subpoena seeks CSI prohibited from disclosure pursuant to Section 48.3 of the Illinois Banking Act.

## II. MOTION TO COMPEL COMPLIANCE WITH SUBPOENA

As noted previously, Defendants are seeking an order compelling MainSource Bank to

---

[3] Pursuant to 205 Ill. Comp. Stat. 5/2, references to "Commissioner" in this context mean "Secretary of Financial and Professional Regulation."

produce all records responsive to paragraph 5 of the Subpoena. Specifically, Defendants want MainSource Bank to provide incident reports that led to the filing of an SAR, as well as all other documents that supported the filing of any SAR with respect to LaCost Amusement's accounts. As noted above, the Illinois Department of Financial and Professional Regulation has determined that these requested documents fall within the definition of CSI in the Illinois Banking Act and are prohibited from disclosure by MainSource Bank under Illinois law.

In addition, section 5318(g) of the Annunzio-Wylie Anti-Money Laundering Act (Act) requires financial institutions to report "any suspicious transaction relevant to a possible violation of law or regulation." Gregory v. Bank One Corp., Inc., 200 F. Supp. 2d 1000, 1001 (S.D. Ind. 2002), quoting 31 U.S.C. § 5318(g)(1). These reports of suspicious activities are the Suspicious Activity Reports referred to as "SARs." See Gregory, 200 F. Supp. 2d at 1001. The Act also provides that, if an SAR is provided to a government agency "the financial institution . . . may not notify any person involved in the transaction that the transaction has been reported." 31 U.S.C. § 5318(g)(2). The Act has been the subject of implementing regulations by the various federal offices that regulate financial institutions, including the Federal Deposit Insurance Corporation (FDIC), the Office of the Comptroller of the Currency (OCC), the Office of Thrift Supervision (OTS) and the Financial Crimes Enforcement Network (FinCEN).

Because MainSource Bank is a state chartered bank, it is regulated by the FDIC. The FDIC promulgated implementing regulations regarding the Act which require financial institutions to file an SAR with FinCEN under certain circumstances. 12 C.F.R. § 353.3(a). The FDIC regulations also provide:

> *Confidentiality of suspicious activity reports.* Suspicious activity reports are confidential. Any bank subpoenaed or otherwise

> requested to disclose a suspicious activity report or the information contained in a suspicious activity report shall decline to produce the suspicious activity report <u>or to provide any information that would disclose that a suspicious activity report has been prepared or filed</u> citing this part, applicable law (*e.g*., 31 U.S.C. 5318(g)), or both, and notify the appropriate FDIC regional office (Division of Supervision and Consumer Protection (DSC)).

12 C.F.R. § 353.3(g) (emphasis added). The regulation forbids all disclosures of SARs, not just disclosures to involved persons. See Gregory, 200 F. Supp. 2d at 1002. The Act and the regulation "thus create an unqualified discovery and evidentiary privilege that cannot be waived by the reporting financial institution." Gregory, 200 F. Supp. 2d at 1002, citing Lee v. Bankers Tr. Co., 166 F.3d 540, 544 (2nd Cir. 1999); Whitney Nat'l Bank v. Karam, 306 F. Supp. 2d 678, 682 (S.D. Tex. 2004); United States v. Holihan, 248 F. Supp. 2d 179, 186 (W.D.N.Y. 2003); see also Weil v. Long Island Sav. Bank, 195 F. Supp. 2d 383, 387-89 (E.D.N.Y. 2001). "SARs are 'non-public information.'" Hasie v. Office of the Comptroller of the Currency of the United States, 633 F.3d 361, 366 (5th Cir. 2011).

However, despite the prohibition against a bank's disclosure of the existence or contents of an SAR, supporting documentation remains discoverable. Holihan, 248 F. Supp. 2d at 187, citing Gregory, 200 F. Supp. 2d at 1002. Supporting documentation which would not reveal either the fact that an SAR was filed or its contents cannot be shielded from otherwise appropriate discovery. Holihan, 248 F. Supp. 2d at 187, citing Weil, 248 F. Supp. 2d at 389. The court in Cotton v. PrivateBank & Tr. Co., 235 F. Supp. 2d 809, 815 (N.D. Ill. 2002) stated:

> There are two types of supporting documents. The first

> category represents the factual documents which give rise to suspicious conduct. These are to be produced in the ordinary course of discovery because they are business records made in the ordinary course of business. The second category is document representing drafts of SARs or other work product or privileged communications that relate to the SAR itself. These are not to be produced because they would disclose whether a SAR has been prepared or filed.

See also Regions Bank v. Allen, 33 So. 3d 72, 76 (Fla. Dist. Ct. App. 2010). The court in Regions Bank explained that "transactional and account documents such as wire transfers, statements, checks, and deposit slips are the types of documents generated in the ordinary course of business that are subject to discovery." Regions Bank, 33 So. 3d at 76. The court further explained that, "[b]y contrast, a draft SAR or internal memorandum prepared as part of a financial institution's process for complying with federal reporting requirements is generated for the specific purpose of fulfilling the institution's reporting obligation." Regions Bank, 33 So. 3d at 76. The court stated that, "[t]hese types of documents fall within the scope of the SAR privilege because they may reveal the contents of a SAR and disclose whether 'a SAR has been prepared or filed.'" Regions Bank, 33 So. 3d at 76-77.

In this case, MainSource Bank has stated that it has already provided to Defendants the Defendants' deposit slips and CTRs, which are the factual, transactional documents made in the ordinary course of business that fall into the first category identified in Cotton and further explained in Regions Bank. Nevertheless, Defendants have requested additional documents, including incident reports that led to the filing of an SAR and other documents related to the filing of SARs. Defendants have asked this court to compel MainSource Bank to produce these documents. This

court agrees with MainSource Bank, however, that these documents fall squarely within the second category of documents which relate to the SAR itself and fall within the scope of the SAR privilege based on Cotton and Regions Bank. These documents cannot be produced because they would disclose whether an SAR has been prepared or filed.

For all of the reasons stated, Defendants' Motion to Compel Compliance (#57) is DENIED.

### III. MOTION TO COMPEL DISCLOSURE

Defendants have asked this court to order the Government to produce SARs and to determine whether there are any relevant documents maintained by the OCC and the FDIC and then disclose any such documents.[4]

As far as SARs, the Government is correct that 31 U.S.C. § 5318 prohibits such disclosure. This section states, "no officer or employee of the Federal Government or of any State, local, tribal, or territorial government within the United States, who has any knowledge that such report was made may disclose to any person involved in the transaction that the transaction has been reported, other than as necessary to fulfill the official duties of such officer or employee." 31 U.S.C. § 5318(g)(2)(A)(ii). In their Reply to the Government's Response, Defendants argued that the Government can be required to disclose SARs in its possession based upon United States v. Evanson, 2007 WL 128960 (D. Utah 2007). This court is not persuaded. In fact, the decision cited by Defendants was issued by United States Magistrate Judge David Nuffer and was reversed by United States District Judge Tena Campbell. United States v. Evanson, 2007 WL 3171547 (D. Utah 2007). This court concludes, based upon the applicable statute and case law, that the Government is not required to provide SARs to Defendants. In doing so, this court accepts, without hesitation,

---

[4] In their Reply, Defendants limited their initial request somewhat and stated that they are only seeking documents from the OCC and FDIC.

the Government's representation that it is unaware of any information in any SAR that should be disclosed under Brady or Giglio.[5]

This court also declines to order the Government to go on a search for documents which may (or may not) be in the possession of the OCC and the FDIC. The Government has an obligation under the Due Process Clause to provide defendants, upon request, all evidence in its possession that is favorable to the accused and material to guilt or punishment. Brady, 373 U.S. at 87. In Giglio, the Supreme Court extended Brady to include information concerning the reliability of key Government witnesses. Giglio, 405 U.S. at 154-55. The Seventh Circuit has stated that, as a general rule, "the government's obligation to disclose exculpatory or impeaching information under *Brady* is limited to that information which is then known to the government." United States v. Morris, 80 F.3d 1151, 1169 (7th Cir. 1996).

In Morris, the district court concluded that Brady did not require the Government to seek out allegedly exculpatory information in the hands of the Office of Thrift Supervision, the Securities Exchange Commission or the Internal Revenue Service. Morris, 80 F.3d at 1169. "Because none of those agencies were part of the team that investigated this case or participated in its prosecution, the district court would not impute their knowledge of potentially exculpatory information to the present prosecutors." Morris, 80 F.3d at 1169. The Seventh Circuit rejected the defendants' argument that the district court's decision was inconsistent with Kyles v. Whitley, 514 U.S. 419, 437 (1995). The court held that Kyles cannot be read "as imposing a duty on the prosecutor's office to learn of information possessed by other government agencies that have no involvement in the investigation or prosecution at issue." Morris, 80 F.3d at 1169. Because Defendants do not dispute that the OCC and FDIC have no involvement in the investigation or prosecution of this case, this

---

[5] Therefore, the Government is correct that the timing set out in the Jencks Act applies.

court concludes, based upon Morris, that the Government has no obligation to seek out information, which may or may not exist, from those agencies.

For all of the reasons stated, Defendants' Motion to Compel Disclosure (#58) is DENIED.

IT IS THEREFORE ORDERED THAT:

(1) The Motion for Leave to Intervene (#64) filed by the Illinois Department of Financial and Professional Regulation is GRANTED. This court has therefore considered the Department's Response to Defendants' Motion to Compel (#66).

(2) Defendants' Motion to Compel Compliance with Subpoena Duces Tecum to MainSource Bank (#57) is DENIED.

(3) Defendants' Motion to Compel Disclosure by the United States of Material Pursuant to *Brady* and/or *Giglio* (#58) is DENIED.

ENTERED this 22nd day of April, 2011

**s/ Michael P. McCuskey**
MICHAEL P. McCUSKEY
CHIEF U.S. DISTRICT JUDGE